**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MINERVA LEONARD, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| HOMEWARD RESIDENTIAL, INC, f/k/a AMERICAN HOME MORTGAGE SERVICING, INC., | ) ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

### INTRODUCTION

1. Plaintiff brings this action to secure redress from unlawful mortgage servicing practices engaged in by defendant Homeward Residential, Inc., f/k/a/ American Home Mortgage Servicing, Inc. ("Homeward"). Plaintiff alleges a violation of the Cranston-Gonzales amendments to the Real Estate Settlement Procedures Act, 12 U.S.C. §2601 et seq. ("RESPA"), ("TILA"), and the Illinois Consumer Fraud Act.

### JURISDICTION AND VENUE

2. This Court has jurisdiction under 28 U.S.C. §§ 1331, 1337 and 1367, 12 U.S.C. §2605, and 15 U.S.C. §1640.

3. Venue in this District is proper because defendant does or transacts business in this District.

### PARTIES

4. Plaintiff is an elderly widow with limited English language skills who resides in a home she has owned since 1995 on the South Side of Chicago.

5. Defendant Homeward Residential, Inc. is a Delaware corporation that does business in Illinois. Its registered agent and office is CT Corporation System, 208 S. LaSalle St., Suite 814, Chicago, IL 60604. Homeward was formerly known as American Home

1

Mortgage Servicing, Inc.

6. Defendant is engaged in the business of servicing residential mortgage loans, and has a portfolio of millions of dollars of mortgage loans.

## FACTS

7. In 2001, Plaintiff obtained a predatory mortgage from a now defunct subprime lender, Option One Mortgage Corporation. The original principal balance on the loan was $31,000, and it provided for an adjustable rate mortgage with a floor of 10.1% interest. At all relevant times, plaintiff has been directed to make her payments to Homeward, which is the servicer or subservicer of the loan.

8. On information and belief, Homeward has not informed plaintiff who its principal is, and was acting at all relevant times as agent of an undisclosed principal. As a loan servicer or subservicer, Homeward has a duty to implement the terms of the mortgage on behalf of the owner of the mortgage.

9. Plaintiff has always paid her own property taxes, which are extremely low because she has both a senior and a homeowner's exemption and a senior freeze. Plaintiff's taxes are paid up to date and have been kept current at all relevant times.

10. On the summer of 2011, soon after plaintiff's husband died, defendant began demanding that plaintiff escrow her taxes, because it claimed she was delinquent in her tax payments.

11. Defendant overpaid plaintiff's taxes, and calculated its required escrow deposit based on inflated amounts. The increased escrow demand more than doubled plaintiff's mortgage payments from approximately $309 per month to over $700 per month.

12. Defendant eventually obtained a refund from Cook County, which it sent to plaintiff.

13. Despite the fact that the refund should have alerted defendant to the fact that it was overpaying plaintiff's taxes, defendant continued to calculate plaintiff's required

escrow deposits based on inflated numbers, and continued to demand excessive monthly payments from plaintiff.

14. Plaintiff's daughter Sondia Leonard attempted to assist plaintiff in resolving the error. At first, Sondia attempted to resolve the errors by phone, at one point making almost daily phone calls to defendant. At one point a representative named "Dallas" admitted to plaintiff that the account was added in error, and advised her to write a letter to defendant's tax department in order to get the error corrected. Defendant's representatives told Sondia they needed to have a "specialist" look into the problem, and that they would get back to her. However, they never did get back to Sondia, and Sondia's messages to defendant's representatives were not returned.

15. Sondia then sent defendant correspondence in January and May of 2012, requesting that defendant drop its requirement that plaintiff escrow her taxes because she had always paid them herself and defendant was overpaying the taxes. <u>Appendices A and B</u>

16. Defendant did not correct the errors and drop its inflated escrow demands in response to the January and May 2012 correspondence from plaintiff's daughter.

17. Plaintiff continued making the contractually required payments of principal, interest and insurance, but did not pay the artificially inflated amount defendant was demanding for taxes. Plaintiff also continued to pay her property taxes herself.

18. Plaintiff is living on a fixed income, and cannot afford to pay defendant's inflated demands.

19. Starting in late Fall of 2011, defendant made numerous, almost daily collection calls to plaintiff threatening to foreclose on her property if she did not pay the inflated mortgage payments. Many of the calls came from India, and plaintiff had trouble communicating with the callers. On at least one occasion, defendant's employee informed plaintiff that she would be sleeping on the streets if she did not pay the amounts demanded. The calls were extremely upsetting to plaintiff, and left her in a state of panic. The calls continued

until March or April of 2011, when they were finally stopped in response to repeated requests by plaintiff's daughter Sondia.

20. In May 2012, defendant began returning plaintiff's payments to plaintiff, thus placing her loan on a foreclosure track. Defendant also added various "foreclosure related" charges to her account. Defendant threatened plaintiff with foreclosure by phone and by letter.

21. Frustrated with her inability to get defendant to resolve the problem, and scared of losing her home, plaintiff retained an attorney to assist her.

22. Plaintiff's counsel, who has previously sued defendant for problems related to the mishandling of escrowed items, sent defendant a qualified written request on June 21, 2012, requesting that defendant remove the tax escrow account from her loan, reduce her mortgage payment accordingly, and accept her mortgage payments. Appendix C

23. Defendant once again returned plaintiff's mortgage payment in June 2012.

24. On July 20, 2012, defendant sent plaintiff's counsel a letter responding to the qualified written request. Appendix D Although defendant's letter acknowledges receiving various escrow refunds, which would indicate plaintiff's position was correct, defendant refused to drop the tax escrow, and refused to reevaluate the required deposit for her escrow account on the grounds that the account was delinquent. Appendix D also indicated that defendant had once again overpaid plaintiff's taxes in July 2012.

25. Defendant's letter claimed that the escrow account was added due to a mixed tax payment in 2010. In fact, plaintiff had paid the installment in question on or about June 25, 2010, as shown by Appendix E.

26. Defendant's refusal to correct its excessive escrow demands because the loan was delinquent was not made in good faith, as it was defendant's own inflated payment demands that resulted in the loan being delinquent in the first place.

27. Plaintiff has been damaged by defendant's course of conduct as set forth above, in that she has been aggravated and distressed, she has spent time and money attempting

to correct defendant's errors, without success, and improper late charges and foreclosure charges have been assessed against her account. Plaintiff has been extremely distressed, has lost sleep and fears losing her home due to defendant's refusal to accept her mortgage payments, and threats to foreclose on her property.

28. Defendant has engaged in a pattern and practice of failing to properly respond to borrower correspondence, as evidenced by, plaintiff's own letters to defendant and among other cases:

    a. Kim v. American Home Mortgage Servicing, No. 11-cv 6543 (N.D.Ill.).

    b. A lawsuit filed by the Texas Attorney General in 2010, accusing defendant of improper mortgage servicing tactics, including inflated payments.

    c. Dozens of dozens of complaints on internet based consumer complaint sites about defendant's mortgage servicing practices.

## COUNT I – RESPA

29. Plaintiff incorporates paragraphs 1-28.

30. Appendices A and C are each "qualified written requests" as defined in the Cranston-Gonzales amendment to RESPA, 12 U.S.C. §2605(e).

31. In violation of its obligations under the Cranston-Gonzales amendment, defendant failed to acknowledge or take corrective action in response to Appendix A, and failed to take corrective action in response to Appendix C.

32. Plaintiff is entitled to actual and statutory damages under 12 U.S.C. §2605(f).

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the plaintiff and against defendant for:

    (1) Statutory damages;

(2) Actual damages;

(3) Attorney's fees, litigation expenses and costs of suit;

(4) Such other or further relief as the Court deems proper.

## COUNT II – BREACH OF CONTRACT

33. Plaintiff incorporates paragraphs 1-28.

34. Plaintiff has complied with the terms of her loan agreement.

35. The following actions of defendant were inconsistent with the parties' contract:

   a. Demanding that plaintiff pay excessive amounts to fund an unnecessary tax escrow account.

   b. Improperly calculating the required monthly payments for taxes.

   c. Overpaying Cook County, and attempting to collect the overpayments from plaintiff.

   d. Assessing improper late charges and foreclosure related expenses.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the plaintiff and against defendant for:

(1) Actual damages;

(2) An order requiring defendant to cancel the tax portion of the escrow account, and any late charges and foreclosure/default related charges ab initio;

(3) An order requiring defendant to accept plaintiff's mortgage payments and treat her loan as current;

(4) Costs;

(5) Such other or further relief as the Court deems proper.

## COUNT III – CONSUMER FRAUD ACT

36. Plaintiff incorporates paragraphs 1-28.

37. Defendant engaged in unfair and deceptive acts and practices, in violation of 815 ILCS 505/2, by engaging in the following conduct:

   a. Demanding excessive sums for an unnecessary tax escrow account.

   b. Treating plaintiff's loan as if it were delinquent when she failed to pay the excessive sums.

   c. Assessing improper late charges and foreclosure/default related expenses, when the only default, if any, was caused by its own excessive payment demands.

   d. Refusing to re-analyze plaintiff's escrow account on the grounds that her loan was delinquent, when its own excessive escrow demands caused the alleged delinquency.

   e. Treating plaintiff's loan as late when it was not late and threatening plaintiff with foreclosure.

38. Defendant's conduct was part of a pattern of mortgage servicing abuse, including the mishandling escrow accounts.

39. Defendant's conduct occurred in the course of trade or commerce.

40. Plaintiff suffered actual damages as a result.

41. Defendant's conduct was abusive and reckless, especially in light of Ms. Leonard's age.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of the plaintiff and against defendant for:

   (1) Actual damages;

   (2) Punitive damages;

   (3) An order requiring defendant to drop the tax escrow on plaintiff's account, and any late charges, default and foreclosure charges it has imposed.

(4) An order requiring defendant to accept plaintiff's mortgage payments and treat her loan as current;

(5) Attorney's fees, litigation expenses and costs of suit;

(6) Such other or further relief as the Court deems proper.

/s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
Tara L. Goodwin
Rupali R. Shah
EDELMAN, COMBS, LATTURNER
 & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)

## JURY DEMAND

Plaintiff demands trial by jury.

/s/Daniel A. Edelman
Daniel A. Edelman

## NOTICE OF LIEN AND ASSIGNMENT

Please be advised that we claim a lien upon any recovery herein for 1/3 or such amount as a court awards.   All rights relating to attorney's fees have been assigned to counsel.

/s/Daniel A. Edelman
Daniel A. Edelman

Daniel A. Edelman
EDELMAN, COMBS, LATTURNER
 & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois  60603
(312) 739-4200
(312) 419-0379 (FAX)